UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DONNIE RAY TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:08-CV-241 |
| | ) (PHILLIPS/GUYTON) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff Donnie Ray Turner seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On May 12, 2005, the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423, claiming disability as of April 25, 2005. [Tr. 9]. After his application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On October 3, 2007, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 9]. On November 20, 2007, the ALJ found that Plaintiff was not disabled. [Tr. 18]. The Appeals Council denied the Plaintiff's request for review; thus the

decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since April 25, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.)

3. The claimant has the following severe impairments: obesity, obstructive sleep apnea, narcolepsy, degenerative spine disease with back and neck pain, major depressive and panic disorder, and anxiety disorder, not otherwise specified (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift 20 pounds, frequently lift 10 pounds, and sit, stand, and/or walk about six hours of an eight hour workday. He could occasionally reach overhead and stand on hard surfaces. He could perform no more than occasional, stooping, crouching, crawling, and climbing stairs and ramps. He should never bend from the waist to the floor or climb ropes, scaffolds, or ladders. He should not drive or be exposed to excessive humidity or temperature extremes. He could perform no more than simple, repetitive, and non-detailed tasks, have no more than casual contact with the public or coworkers, non-confrontational contact with supervisors, and changes should be infrequent and gradually introduced.

6. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (Social Security Rule 96-7) [sic].

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

8. The claimant was born on October 25, 1955 and was 49 years old, which is defined as a "younger individual," on the alleged disability onset date. As of October 24, 2005, he was "closely approaching advanced age" (20 CFR 404.1563).

9. The claimant has a "limited" education and is able to communicate in English (20 CFR 404.1564).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

12. The claimant has not been under a disability, as defined in the Social Security Act, from April 25, 2005 through the date of this decision (20 CFR 404.1520(g)).

[Tr. 11-18].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

3

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III.     STANDARD OF REVIEW**

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Serv.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.     ANALYSIS**

On appeal, Plaintiff argues that there is not substantial evidence to support the ALJ's determination that the Plaintiff is not disabled. Plaintiff contends the ALJ erred by not according the proper weight to the opinion of Craig J. Rylands, M.D., ("Dr. Rylands"), a treating physician, [Doc. 12 at 4], and as a result the Plaintiff alleges the ALJ misapplied the Medical-Vocational Guidelines ("Grid") Rules contained in 20 C.F.R. 404, Pt. P, App. 2. The Commissioner contends that substantial evidence supports the ALJ's disability determination. [Doc. 16 at 21].

**A.     The Weight Accorded to the Opinion of Craig J. Rylands, M.D.**

Dr. Rylands completed two Medical Opinion Forms [Tr. 179-81, 334-36], which gave cursory evaluations of the Plaintiff's symptoms and abilities. In describing and evaluating the first of these two evaluations,[1] the ALJ remarked in his decision as follows:

> In December 2005, Dr. Rylands, the claimant's primary care physician, completed a Medical Opinion Form in which he opined that the claimant could frequently lift 1-5 pounds, occasionally lift 1-10 pounds and infrequently lift 11-25 pounds. The examiner was "not sure" how much the claimant could stand and walk, but he could sit for eight hours, four hours continuously, of an eight hour workday. He could infrequently bend at the waist and occasionally reach above shoulder, stand on hard surface[s], and use his hands for fine manipulation. He would not need to elevate his lower extremities or require bed rest during a normal workday. He would need a 5-10 minute rest break for every hour worked. He could be reasonably expected to be reliable in attending an eight hour day, forty hour workweek. His pain, medical condition, or medication would not cause lapses in concentration and memory on a regular basis. He would start the day with moderate to moderately severe pain and by the end of the day his pain would be moderately severe to severe. He should avoid exposure to excessive heat and humidity. He would not usually have chronic absences, but "could need time off occasionally." This opinion is inconsistent with the benign clinical examinations and objective testing, as well as his conservative treatment for pain. It is also inconsistent with the claimant's reported daily activities, noted below, and is entitled to minimal weight. The

---

[1] The second Medical Opinion form was completed October 8, 2007, five days after the hearing before the ALJ. The ALJ's decision does not speak directly to this second form, but the second form differs from the first form in two ways: it indicated that the Plaintiff could "never" lift or carry twenty-one to twenty-five pounds (instead of "infrequently" carrying such weights) and it indicated that the Plaintiff could "infrequently" reach above shoulder level (rather than "occasionally" reaching above shoulder level). [Tr. 179, 334]. In addition, Dr. Rylands commented that Plaintiff had a 50% reduced range of motion in his neck and a 50% reduced amount of flexion in his lumbar spine. [Tr. 181, 336].

It appears to the Court that the ALJ received the second Medical Opinion Form on October 15, 2007. The Plaintiff does not take issue with the ALJ's failure to specifically address these later, more restrictive evaluations, nor does she allege that the ALJ failed to consider this second Medical Opinion Form. Nonetheless, the Court's analysis relates to both of the Medical Opinion forms, as the ALJ's reasons for discounting the first form are equally applicable to the even more restrictive contents of the second form.

6

> doctor's opinion contrasts sharply with the other evidence of record
> and even within the assessment, which renders it less persuasive.
> However, the treating physician stated that the claimant could be
> reasonably expected to be reliable in attending an eight hour day,
> forty hour workweek, which would support that the claimant is "not
> disabled" (Exhibit F [Medical Evidence] pages 99, 177, 323-25, 413-
> 416, 452, 457, 464, 466, and 468).

[Tr. 12-13]. Thereafter, the ALJ reviewed the records of treatment for the Plaintiff's sleep conditions, cardiac conditions, mental health, diabetes, and other alleged impairments. [Tr. 13]. The ALJ later reviewed the above referenced daily activities noting, "[the Plaintiff] reported that he performs such daily activities as shopping, preparing simple meals, performing light household chores, visiting friends and relatives, tending to his personal self-care needs, driving short distances, mowing the yard, attending church, and watching television." [Tr. 16].

As a rule, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927. The reason for such a rule is clear: the treating physician has had a greater opportunity to examine and observe the patient. Id. Furthermore, as a result of the treating physician's duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. Id. (citing Schisler v. Heckler, 787 F.2d 76, 85 (2d Cir. 1986)). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the

7

opinion.  20 C.F.R.§§ 404.1527(d)(2) and 416.927.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision.  20 C.F.R. §§ 404.1527(d)(2) and 416.927.  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).  Nonetheless, the ultimate decision of disability rests with the ALJ, id. (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984)), and accordingly, the ALJ is not bound by the opinions of the treating physician as long as the ALJ sets forth a basis for rejecting it.  See Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (citing Fife v. Heckler, 767 F.2d 1427, 1437 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant)).

In the present case, Dr. Rylands was the Plaintiff's treating physician, as he was the Plaintiff's own physician and had provided medical treatment as part of an ongoing treatment relationship.  See 20 C.F.R. § 220.5.  The Plaintiff argues that the ALJ's decision to accord the contents of the Medical Opinion forms that Dr. Rylands completed only "minimal weight" is not supported by substantial weight.

The Court agress that a number of Dr. Rylands's specific evaluations of the Plaintiff's ability contradict the ALJ's residual functional capacity determination ("RFC") that the Plaintiff was able

8

to complete light work[2] with certain enumerated conditions [Tr. 14-15]. However, Dr. Rylands's overarching evaluations are not inconsistent with the ALJ's decision that the Plaintiff was not disabled. For example, Dr. Rylands found that the Plaintiff could reasonably be expected to be reliable in completing forty hour weeks composed of eight hour days [Tr. 180, 335] and that the Plaintiff would not be chronically absent from work, although he might need time off 'occasionally' [Tr. 181, 336]. As this Court has previously recognized, the analysis of a claimant's disability for purposes of social security regulations is reserved for the ALJ. Steele v. Astrue, 2009 WL 890056, at *7 (E.D. Tenn, Guyton, M. J., 2009). However, it is worth noting that, notwithstanding the disabilities Dr. Rylands found, in his opinion the Plaintiff could complete a regular work schedule.

Putting aside any consistency between Dr. Rylands's opinion and the ALJ's determination, the Court turns to the specific findings by Dr. Rylands–i.e. lifting restrictions, exertion restrictions, and sitting/standing restrictions–to which the ALJ accorded "minimal weight" in determining that the Plaintiff retained the RFC to complete light work. A review of the evidence of record reveals that Dr. Rylands's assessments were, as the ALJ found, inconsistent with his own treatment of the Plaintiff and also inconsistent with the other evidence of record. Thus for the reasons, more fully explained below, the Court finds that the ALJ's decision to accord the contents of the Medical Opinion forms only "minimal weight" was supported by substantial evidence.

Initially, the Court notes that the Medical Opinion forms are questionnaires that require a physician to mark the severity of a functional restriction on a scale that is provided—i.e. patient can

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this catagory when it requres a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

9

complete a given task "never," "infrequently," "occasionally," or "frequently"—and require the physician to answer a series of yes or no questions. [Tr. 179-81, 334-36]. At the end of the form, a space is provided for additional comments. Such an evaluation, without any references to supporting evidence or the rationale behind such restrictions, makes it difficult to determine whether the opinion is well-supported by clinical and laboratory diagnostic techniques, objective tests, or other evidence in the record, 20 C.F.R. § 404.1527(d)(2) and 416.927.

Looking at Dr. Rylands's own treatment records, on October 31, 2005, just six weeks before Dr. Ryland completed the first medical opinion form, he noted that the Plaintiff was seen for a routine physical and the physician's notes from the visit found that the Plaintiff was "feeling fairly well." [Tr. 314]. On December 6, 2005, the same day that Dr. Rylands completed the Medical Opinion form, he acknowledged the Plaintiff had back problems but expressed no reservations about the Plaintiff's continuing to work under "some work restrictions," which were placed on him by the Knoxville Orthopedic Clinic. [Tr. 311]. Notes from a visit on May 29, 2007, state that the Plaintiff was "feeling well" and "had no major complaints." [Tr. 214]. Finally, notes from a visit on September 21, 2007, just over two weeks before Dr. Rylands completed the second form, make no mention of any back or skeletal problems that would interfere with the Plaintiff's ability to stand, sit, lift, or complete other tasks required by light work. [Tr. 189]. The notes from the visit address only a skin infection, and do not hint at any marked deterioration in the Plaintiff's ability to lift objects or raise his arms above shoulder level that Dr. Rylands noted in the second Medical Opinion form, which he filled out just weeks later.

Further, the evidence in record is, as the ALJ found, inconsistent with the considerable restrictions contained in the Medical Opinion forms. For example, Jeffery P. Nelson, M.D., ("Dr.

10

Nelson"), the Plaintiff's neurologist, found the Plaintiff was "not pain free, but everything is tolerable," and noted that steroid injections had been helped ease the pain considerably. [Tr. 195]. On March 5, 2007, after the Plaintiff's car accident, Dr. Nelson found that the Plaintiff had been "doing well until [the] motor vehicle accident," and despite the set-back caused by the accident, Dr. Nelson proscribed only a "conservative therapy with chiropractic care." [Tr. 193]. Further, the medical evidence in the record indicates that the Plaintiff's neuropathy and polyneuropathy were mild. [Tr. 242, 202].

Finally, and as noted by the ALJ in his decision, Dr. Rylands's evaluation was inconsistent with the Plaintiff's reported daily physical activities. [Tr. 13]. The ALJ explained that though the Plaintiff has mild restrictions on daily living he is still able to drive short distances, maintain personal hygiene, do some household chores, prepare simple meals, and concentrate long enough to watch television, mow the yard, and complete household repairs. [Tr. 14]. Further, he is "able to attend church, grocery shop with his wife, and visit with friends and family. [Tr. 14]. A review of the record reveals substantial evidence to support the ALJ's summary of the Plaintiff's reported daily activities, [Tr. 366, 377, 671-74]. These activities discredit certain findings by Dr. Rylands. For example, grocery shopping, mowing the yard, and completing household repairs and chores are inconsistent with Dr. Rylands's finding that the Plaintiff could only occasionally lift 10 pounds and infrequently lift 20 pounds and that the Plaintiff could only infrequently bend at the waist and reach above the shoulders. In addition, the Plaintiff's own admissions about the amount of time he spends sitting on the porch, which was enough time to acquire the noticeable tan that the ALJ noted [Tr. 671-73], and sitting around in general [Tr. 377] directly contradict Dr. Rylands's assessment that the Plaintiff could only sit for a limited amount of time.

11

Based on the foregoing, the Court finds that the assessments contained in the Medical Opinion forms were not consistent with Dr. Rylands's own treatment records and were not consistent with the record as a whole. Accordingly, the ALJ's decision to afford only minimal weight to Dr. Rylands's opinion is supported by substantial evidence. In reviewing the ALJ's decision, the Court finds that the ALJ articulated numerous reasons for affording less weight to the assessment including internal inconsistency, inconsistency with the record as a whole, and the reports of daily activities that directly contradicted the physical limitations, and thus the Court finds the ALJ gave "good reasons" for the decreased weight accorded to Dr. Rylands's opinion in accordance with 20 C.F.R. §§ 404.1527(d)(2) and 416.927.

**B.     Application of the Medical-Vocational Guidelines**

In an argument closely related argument, the Plaintiff contends that the ALJ incorrectly applied the Medical-Vocational Rules. [Doc. 12 at 7]. The Plaintiff's argument is that if Dr. Rylands's opinion had been accorded additional weight, as the Plaintiff thinks it should have been, then the Medical-Vocational Guidelines would have directed a finding that the Plaintiff was disabled, see 20 C.F.R. Pt. 404, Subpt. P, App. 2 at 201.10-11.

However, as discussed above, the Court finds that substantial evidence supported the ALJ's decision to discount Dr. Rylands's findings, and thus, the argument that the Medical-Vocational Guidelines would have directed a different decision, if Dr. Rylands's opinion been accorded more weight, fails.

**V.     CONCLUSION**

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work. Substantial evidence supports the ALJ's

findings and conclusions. Therefore, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

    s/ H. Bruce Guyton
United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).